*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NICHOLAS RYAN DUNN, | ) | |
| | ) | Supreme Court No. S-16685 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-04609 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DAKOTA CHRISTINE JONES, | ) | |
| | ) | No. 7416 – November 1, 2019 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Nicholas Ryan Dunn, pro se, Marion, Arkansas, Appellant. Dakota Christine Jones, pro se, Anchorage, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.      INTRODUCTION

A father sought to modify a child support order on the basis that his income had decreased. Additionally, he asked that the support order be changed to not require him to contribute to the children's health insurance costs. The superior court found that his gross income had changed by less than 15% and that he therefore was not entitled to a modification of child support. And because the mother was now paying for health

insurance for the children, the court added a health insurance adjustment to its new support order while keeping the basic monthly amount the same.  The father appeals.  We conclude it was error for the superior court to determine that as a matter of law Dunn was obligated to pay 50% of his children's health insurance costs.  Further, it was an abuse of discretion for the court to decline to modify Dunn's child support obligation without first calculating an updated adjusted annual income and monthly child support amount, and we reverse this order and the court's order regarding health insurance costs.  In all other respects, we affirm.

## II.    FACTS AND PROCEEDINGS

Nicholas Ryan Dunn and Dakota Christine Jones separated in 2012, when Dunn left Alaska for Arkansas.  Dunn and Jones are the parents of two children.  Jones is also the mother of two older children, who are not Dunn's children.

In a 2013 child custody determination, the superior court denied Dunn's and Jones's requests for the termination of Dunn's parental rights.  It awarded Jones sole legal and sole physical custody of the children.  The court issued a child support order, finding that Dunn's annual gross income was $35,360 and that his annual allowable deductions were $1,498.80 and requiring Dunn to pay $762 in child support each month.  Neither parent was required to purchase health insurance.  The court ordered that "[i]f insurance becomes available to a parent at a reasonable cost, that parent must purchase the insurance," at which time "the monthly child support obligation will increase by 50% of the cost of the insurance" if Jones purchased it or decrease by 50% of the cost if Dunn purchased it.

Dunn returned to Alaska in 2014 and alleges he and Jones reconciled in October 2014 and lived together until separating again in May 2016.  Jones concedes that Dunn lived with her during that time and that she added him to her health insurance, but she alleges that they did not live together "as a couple" and that they "were trying to

reestablish a friendly relationship for only the children." She asserts that if they had actually reconciled, Dunn would have sought to modify his child support while in Alaska. Dunn argues that while he and Jones lived together, his child support payments constituted his contribution to the household expenses. Both agree that Dunn returned to Arkansas in 2016 and started working for a construction company and that he subsequently quit (possibly in late October) and took a lower-paying job.

In December 2016 Dunn filed a motion to modify child support, requesting the child support payments be reduced because his income had decreased. He also requested the court change the support order to no longer require him to provide insurance for the children because he could not "afford medical on the children." He attached a child support guidelines affidavit and copies of four pay stubs from November and December 2016.

Jones opposed the motion. In her accompanying child support guidelines affidavit, she disputed Dunn's income calculations and provided her own calculations based on the pay stub with the second-highest pay of the four Dunn submitted. Her affidavit also noted the children no longer had health insurance through a state children's insurance program as of August 2015 and that she was insuring them through her employer at a monthly cost to her of $448.08.

The superior court held a hearing in February 2017. Dunn had been given leave to participate telephonically but did not call in; Jones was present. The court found that Dunn's decrease in income was less than 15% and therefore did not constitute a material change of circumstances for purposes of modifying child support.[1] The court also took evidence on health insurance, calculated the costs of the children's insurance,

---

[1] *See* Alaska R. Civ. P. 90.3(h)(1) (presuming a material change in circumstances when amount of child support would vary by at least 15% from the current amount.).

and found the costs reasonable. It issued a child support order that retained the income and basic monthly child support amounts from the 2013 child support order and added a $157.50 health insurance adjustment (50% of Dunn's two children's health insurance costs) to Dunn's total monthly support payments in accordance with the provision in the 2013 order.

Dunn appeals, arguing that the court: (1) incorrectly determined that his income had not decreased by more than 15%; (2) improperly adjusted the child support upward to account for the children's health insurance costs; (3) misallocated the insurance costs among the covered children (two of the four of whom were his); and (4) incorrectly found that the insurance costs were reasonable.

## III.   STANDARDS OF REVIEW

"Trial courts have broad discretion in deciding whether to modify child support orders," and such determinations are reviewed for abuse of discretion.[2] An abuse of discretion is found where a decision is "arbitrary, capricious, manifestly unreasonable, or . . . stem[s] from an improper motive."[3]

"[F]actual findings, including findings regarding a party's income," are reviewed for clear error.[4] A factual finding is clearly erroneous if, "after reviewing the

---

[2]    *Petrilla v. Petrilla*, 305 P.3d 302, 305-06 (Alaska 2013) (quoting *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002)).

[3]    *Sharpe v. Sharpe*, 366 P.3d 66, 68 (Alaska 2016) (alterations in original) (quoting *Morris v. Horn*, 219 P.3d 198, 203-04 (Alaska 2009)).

[4]    *Shanigan v. Shanigan*, 386 P.3d 1238, 1240 (Alaska 2017) (quoting *Wilhour v. Wilhour*, 308 P.3d 884, 887 (Alaska 2013)).

record as a whole, [we are] left with a definite and firm conviction that a mistake has been made."[5]

"Interpretation of the civil rules is a question of law that we review de novo."[6]

## IV.   DISCUSSION

### A.    It Was Not An Abuse Of Discretion To Rely On Pay Stub #1343 To Calculate Dunn's Annual Gross Income.

Dunn argues that the superior court erred by calculating his annual income based on a single pay stub, rather than averaging his weekly income from the four pay stubs that were available to the court.  Dunn submitted pay stubs for the following amounts:  $297.00, $302.50, $588.50, and $638.00.  The superior court's calculation of Dunn's new income relied on pay stub #1343, which shows a one-week gross pay of $588.50.  Dunn argues the court should have averaged all four pay stubs.

"The ultimate goal of a [child] support determination 'is to arrive at an income figure reflective of economic reality.' "[7]  In determining a party's income for purposes of calculating a child support order, the superior court has the discretion to choose the best indicator of a party's income, considering the evidence presented.[8]

---

[5]     *Sharpe*, 366 P.3d at 69 (alteration in original) (quoting *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000)).

[6]     *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015).

[7]     *Farr v. Little*, 411 P.3d 630, 635 (Alaska 2018) (quoting *McDonald v. Trihub*, 173 P.3d 416, 427 (Alaska 2007)).

[8]     *See Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992); *see also McDonald*, 173 P.3d at 426 n.33 (explaining that superior court "has discretion to choose method best approximating obligor's [income] on basis of most complete evidence before it" (citing *Coghill*, 836 P.2d at 926)).

The court did not err by not relying on the two pay stubs with the lowest values — Dunn's first two pay stubs at his new job; the four pay stubs Dunn submitted show that as the number of hours he worked increased each week, his gross pay increased correspondingly. The court reasonably could have determined these first two pay stubs were not reflective of Dunn's "economic reality." Additionally, the court did not err by not using the highest-value pay stub alone for its calculations. And the court was not required to average the four pay stubs. It was not an abuse of discretion for the court to rely on pay stub #1343 to calculate Dunn's annual income.

**B.     It Was An Abuse Of Discretion To Decline To Modify Child Support Without First Calculating An Updated Monthly Support Amount Under Alaska Civil Rule 90.3(a)(1) Using Available Figures.**

Dunn also argues that the superior court erred by declining to modify his monthly child support; he argues the court erred in calculating his income for purposes of child support. Alaska Civil Rule 90.3 governs child support awards. It provides that "[a] child support award . . . will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by [the applicable] percentage."[9] Subsection (a)(1) defines adjusted annual income as the parent's total income from all sources minus the deductions enumerated in the Rule.[10] To calculate the monthly child support amount, the court must then multiply the parent's adjusted income by the percentage specified in Rule 90.3(a)(2), depending on the number of children involved, and then divide the resulting annual child support amount by 12. Rule 90.3(h) addresses modification of child support. A court may modify a final child support order "upon a

---

[9]     Alaska R. Civ. P. 90.3(a).

[10]     *Id.* 90.3(a)(1).

showing of a material change in circumstances."[11]  "A material change of circumstances will be presumed if support calculated under [90.3(a)] is more than 15 percent greater or less than the outstanding support order."[12]  When a court receives a motion to modify alleging a material change in circumstances due to a change in a parent's income or deductions, the court must recalculate the parent's adjusted annual income, then calculate the parent's monthly child support obligation based on the parent's new adjusted annual income, and finally compare the support amount to the amount in the outstanding support order.

In his motion to modify support, Dunn alleged that he was "making significantly less at [his] current job."  Dunn filed his motion using a court form that directed him to "attach any documentation you have that supports your request. Examples include pay stubs [and] tax returns."  As discussed above, Dunn attached copies of four pay stubs.  The pay stubs included information about Dunn's income and his deductions.

The superior court did not follow the procedure outlined in Rule 90.3(a) in concluding that Dunn had not demonstrated a material change in circumstances.  Instead it calculated Dunn's gross annual income as of the date of the hearing and compared it to Dunn's gross annual income as of the 2013 support order.  The court seems to have implicitly concluded that any differences in Dunn's deductions were irrelevant.  But in this case the pay stubs submitted to the court contained information about Dunn's actual deductions, and the court therefore should have used those numbers in determining Dunn's adjusted annual income.  Dunn's employer withheld $126.46 in federal, state, Social Security, and Medicare taxes from pay stub #1343.  If we annualize these figures,

---

[11]  *Id.* 90.3(h)(1).

[12]  *Id.*

Dunn's adjusted annual income under Rule 90.3(a)(1) would thus be $24,026.08, his total annual income of $30,602 ($588.50*52) minus his annual mandatory deductions of $6,575.92 ($126.46*52).[13] Under Rule 90.3(a), a parent with two children with an adjusted annual income of $24,026.08 will pay $540.59 per month in child support.[14]

This new monthly child support amount is 29% lower than the amount Dunn had been paying under the 2013 order — $762 based on Dunn's adjusted annual income in 2013 of $33,861.20. Dunn thus demonstrated a presumptive change in circumstances under Rule 90.3(h). The superior court abused its discretion by concluding that he had not done so, without first calculating Dunn's adjusted annual income and actual support amount in accordance with Rule 90.3(a) and without using Dunn's actual, available income and deductions.[15] We reverse the superior court's

---

[13] We note that reliance on information from a single pay stub to calculate annual deductions is not the preferred method for estimating deductions. It is possible that a parent's deductions may change over the course of the year. Many employers take larger amounts of FICA from an employee's first paychecks and then discontinue this deduction when the employee reaches the FICA ceiling. And many employees take a larger income tax withholding than necessary so they can receive a refund at the end of the year. If a parent's actual tax returns are not available, the court should annualize the parent's income and recalculate applicable deductions from the annualized income rather than from a single paycheck. The Alaska Department of Revenue, Child Support Services Division provides an online calculator for just this purpose. Using this calculator we calculate an adjusted annual income for Dunn of $24,624.08. *See Child Support Calculator*, CHILD SUPPORT SERVS. DIV., https://webapp.state.ak.us/cssd/guidelinecalc/form (last visited Sept. 11, 2019).

[14] Rule 90.3(a)(2)(B) provides that the non-custodial parent's adjusted income must be multiplied by 27% (0.27) to calculate the child support award for two children. The $540.59 figure is derived from $24,026.08*0.27/12.

[15] When determining whether there has been a material change under Rule 90.3(h), courts should consider changes in health insurance costs and adjusted

(continued...)

decision that Dunn was not entitled to a monthly child support modification and remand to allow the court to obtain current financial information from Dunn and to recalculate Dunn's monthly child support obligation based on that information.

### C. It Was Error To Rule As A Matter Of Law That Dunn Was Responsible For 50% Of The Children's Health Insurance Costs.

Dunn argues that the cost of the health insurance Jones purchased for the children was not reasonable according to Rule 90.3(d)(i) and that the superior court erred by requiring him to pay half of the cost rather than lowering his obligation for good cause.

Under Rule 90.3(d)(1)(A)(i), the cost of heath insurance is presumptively reasonable if it "does not exceed five percent of the adjusted annual income of the parent" purchasing the insurance.[16]  However, just because a cost of 5% or less is presumptively reasonable does not mean a higher cost cannot also be reasonable.  Here, the court made careful findings about the available insurance and its costs.  The court found that the cost of the health insurance Jones purchased was more than 10% of her income but that it was nevertheless "reasonable because it's what's available and it's good coverage, and children should have coverage."  Jones testified that the four plans available through her work were her only options for insurance and that she received help from human resources in "figur[ing] out which one was the best plan" for her

---

[15]    (...continued) annual income separately because the two components of the award can change independently from each other.

[16]    "The court shall address coverage of the children's health care needs and require health insurance for the children if insurance is available to either parent at a reasonable cost and accessible to the children." Alaska R. Civ. P. 90.3(d)(1)(A). "There is a rebuttable presumption that the cost of health insurance is reasonable if the cost does not exceed five percent of the adjusted annual income of the parent who may be required to purchase the insurance." *Id.* 90.3(d)(1)(A)(i).

circumstances. She was unable to describe the specific differences between the plan she selected and the other three plans, but she explained she had changed her insurance plan multiple times in the past two years. In the context of this evidence, the court did not abuse its discretion by determining the insurance plan she selected and its cost were reasonable.

Rule 90.3(d)(1)(B) addresses allocation of health insurance costs between the parents, explaining that the "court shall allocate equally the cost of . . . insurance between the parties unless the court orders otherwise for good cause." Section VII(A) of the Commentary to Rule 90.3, which addresses health care coverage and health insurance, includes further direction on the allocation of health insurance costs:

> The health insurance will be paid by the party to whom it is available. However, the court must allocate the cost of insurance between the parties. Note that the cost to be allocated is limited to that portion of the total cost necessary to ensure the children involved — not the parent, the parent's new spouse or children of another relationship. . . .
>
> The allocation of the cost of the children's insurance between the parents should be 50/50 unless the court finds good cause to change that percentage. A substantial difference in the parties' relative financial circumstances may constitute good cause. The rule requires the court to adjust child support either upward or downward to reflect the allocation.

During the February 2017 hearing, the superior court totaled the cost of insurance for Jones's four children and found it was $290.81 biweekly. The court indicated that the four children covered had to be considered equally "although that's not the way the plan is done."[17] Because two of the children covered were Dunn's, the court

---

[17]    A paycheck deductions page in the record lists the different amounts paid
(continued...)

divided the total cost for all four children by two for a total of $145.40 biweekly; it then multiplied the biweekly cost by 26 to determine the annual cost and divided the result by 12 equaling a monthly cost for two children's insurance of $315.03. The court found that Dunn should pay $157.52 per month, 50% of the cost of his children's health insurance.

In ordering Dunn to pay half the costs of his children's health insurance, the superior court offered the following explanation:

> I'm going to add $157.52 a month to his child support obligation, because you're paying for the medical insurance, which he's been skating on all along and hasn't paid any of it. He's obligated under the law to — under 90.3 to pay 50% of that, even if he can't afford it. So what? It really doesn't matter under the law.

In its explanation the court failed to recognize the discretion built into Rule 90.3(d)(1)(B). Under Rule 90.3(d)(1)(B), the court "shall allocate equally the cost of . . . insurance between the parties unless the court orders otherwise for good cause." Because the superior court erroneously concluded that as a matter of law Dunn was obligated to pay half of the children's health insurance cost without recognizing the "good cause" variance provision of the Rule, we reverse and remand for the court to

---

[17]    (...continued)
for insurance for "Employee Only," "Employee + 1," "Employee + 2," and "Employee + 3 or more." The page includes typed information (it is unclear who typed it) listing the children by name and the cost of insurance for each type. For example, medical insurance is listed as costing $122.30 for Dunn's first child, $49.36 for Dunn's second child, $49.37 for one of Jones's older children, and $0.00 (free) for Jones's other older child. The costs of dental and vision insurance are likewise listed per child.

consider whether there is good cause to not equally allocate the cost of the children's insurance.[18]

Dunn also argues that the "[c]ourt incorrectly ordered [him] to pay for health insurance to cover Ms. Jones['s] two other children." It appears Dunn is arguing that the superior court erred by "allocating the total cost of the coverage pro rata among all of the children." He argues "[t]he court had evidence of the incremental cost per child" and that because of the way the insurance plan was organized, he should be responsible for the incremental cost for his two children's insurance rather than the pro rata cost. He further argues that even though Jones indicated that "dependent[s] 1 & 2 are [Dunn's two children], the most expensive," Dunn's children should be considered to be "dependents 3 & 4[,] which would make the cost for medical only $49.36, which is more reasonably priced."[19] He argues that "the court impermissibly deviated from the bright line of Civil Rule 90.3 to punish [him] financially."

Under Rule 90.3(d)(1)(C), "[i]f dependent coverage can be added for a single cost, rather than per dependent, and the dependent coverage covers dependents in addition to the children subject to the order, the cost of the dependent coverage will be allocated equally among the dependents covered." The employee-only cost for Jones's insurance is $126.93 biweekly, and the cost of insurance for an "employee + 3 or more" is $417.74, which means the children are added to the plan for a single cost of $290.81;

---

[18] We do not express an opinion on whether the court should exercise its discretion to reduce Dunn's health insurance obligation on remand; we simply point out the legal error the court made in misstating Rule 90.3(d)(1)(B) and failing to exercise its discretion in the first instance.

[19] Dunn appears to be looking at the cost for medical insurance only, as his numbers omit the cost of dental and vision insurance, which were included in the court's calculation. The cost for the third child's medical insurance is actually listed as $49.37, not $49.36, and the fourth child's medical insurance is listed as free.

when that single cost is allocated equally among the four children, the cost of each child's insurance is $72.70 biweekly.

As Dunn points out, the cost for adding each additional dependent to the plan could be calculated based on the amounts listed for "Employee Only," "Employee + 1," "Employee + 2," and "Employee + 3 or more," and those incremental costs are actually listed for each of Jones's four children.[20]  Dunn's reading is problematic, however.  Under his reading, in situations where the cost of adding each dependent is unequal, there would be questions of which dependent is which under the plan, and the insurance cost for a given dependent could vary widely depending on that determination.  In this case, if Dunn's reading were followed, the biweekly cost of health insurance for his two children would be $224.04 if they were considered to be the first two dependents on the plan or $66.77 if they were considered to be the third and fourth dependents.  We conclude that the superior court's formulation of the costs of the children's coverage was consistent with Rule 90.3(d)(1)(B) and its commentary and not an abuse of discretion.[21]

As to Dunn's contention that the superior court was punishing him financially through this pro rata allocation of the health insurance cost among the dependents, he provides no support for that contention beyond his bare assertion, and we perceive nothing to suggest that the court's application of Rule 90.3(d)(1)(C) was punitive.

---

[20]  It is unclear who typed that information.  Dunn suggests that it was typed by Jones.

[21]  *See Rusenstrom v. Rusenstrom*, 981 P.2d 558, 562-63 (Alaska 1999).

**D.    We Decline To Consider Dunn's Other Arguments.**

Dunn makes several other arguments that the superior court erred in denying his motion to modify child support.  Dunn argues that pay stub #1343, with a one-week gross pay of $588.50, that the superior court used for its calculations, is "the highest valued check" of the four he submitted to the court.  He argues the superior court erroneously "added another month's income on to the total annual income" that had been calculated by Jones when it calculated his gross annual income as $30,600.  Dunn argues that the superior court erred in determining that averaging pay stubs #1343 and #1350 (with $588.50 and $638.00 in gross pay, respectively) results in a higher gross income than relying on the $588.50 pay stub alone.  And he argues the superior court did not look at his income calculations.  Because we conclude that the superior court abused its discretion by declining to modify child support without first calculating an updated monthly support amount, we decline to address these additional arguments.

**V.    CONCLUSION**

We REVERSE the superior court's decision that Dunn was not entitled to a child support modification and REMAND for the court to recalculate his monthly child support obligation.  We REVERSE the court's order that Dunn is obligated as a matter of law to pay half the children's health insurance costs and REMAND for the court to determine whether there is good cause to vary his obligation to pay half of his children's health insurance premiums.  We AFFIRM the superior court's decisions on the other points Dunn raises on appeal which we have addressed.