NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TREVOR PAUL FAIRBANKS, | ) | |
| | ) | Supreme Court No. S-17994 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-05436 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CARA EILEEN FOX, f/k/a Cara Fox Fairbanks, | ) | AND JUDGMENT* |
| | ) | |
| | ) | No. 1912 – August 17, 2022 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances:  Trevor Paul Fairbanks, pro se, Anchorage, Appellant.  Kara A. Nyquist, Anchorage, for Appellee.

Before:  Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices.  [Henderson, Justice, not participating.]

## I.    INTRODUCTION

In this divorce case a man appeals issues related to the division of property and the child support award.  With regard to the property division, we conclude:  (1) the superior court's findings are insufficient to support its decision about the husband's contribution of separate assets to the construction of the marital home; (2) the husband waived an argument that amounts paid toward his wife's premarital student debt should have been added to her share of the marital estate; (3) the husband did not waive an

_____

*        Entered under Alaska Appellate Rule 214.

argument that his wife should share the post-separation costs of the children's health insurance; (4) the superior court properly weighed the parties' respective ages and earning capacities when dividing the marital estate; and (5) it was unreasonable to weigh the husband's access to free health care in his favor when dividing the marital estate while also requiring him to purchase private health insurance. With regard to the child support order, we conclude that all of the husband's arguments are waived because they were not timely raised in the superior court. We therefore affirm the child support order, but we remand the property division order for reconsideration of the husband's contribution of premarital assets to the marital home, reconsideration of the division of the marital estate, if necessary, and consideration of whether the parties are required to share the post-separation cost of the children's health insurance.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Trevor Fairbanks and Cara Fox began dating around 2006 and married in 2008. A prenuptial agreement provided that in the event of divorce "[e]ach party shall separately retain all of his or her rights in his or her separate property owned at the time of execution of this Agreement." Property would be assumed to be marital absent "clear and convincing proof" it was separate. Any increase in value or appreciation of separate property during the marriage was to be shared, while commingled property and the marital residence would remain separate.

The prenuptial agreement also listed each party's separate property at the time of marriage. Trevor's included "Land 5500 Penny Circle," two life insurance policies with a total value of $65,000, and three bank accounts with a total value of $226,000. Cara's separate property included about $20,960 in student loan debt and a home valued at $134,000.

The Penny Circle lot had been purchased by Trevor in 2007, a year before the marriage. According to Cara, the couple "planned to build a dream home together," and together they found the land and designed the home. Construction began in the summer of 2008 while the couple lived in the house belonging to Cara. They agreed that she "would be the sole provider while [Trevor] would do the majority of the building." He worked on the house full-time for a while, and Cara assisted with some labor. In the summer of 2010 they moved into their new home and construction was completed about two years later. Their two children were born in 2010 and 2012. They all lived in the Penny Circle home until the couple separated in March 2018, when Cara moved out. She filed for divorce in March 2019.

## B. Proceedings

Cara and Trevor eventually stipulated to joint custody of the children, reserving issues of property, child support, and the children's health insurance for trial. Both Cara and Trevor testified at trial about the funds used to build the Penny Circle home. Cara estimated that they spent between $250,000 and $300,000 on construction. Trevor claimed he paid for most of it with his premarital bank accounts and by cashing out his life insurance plans. Cara agreed that, "[t]o the best of [her] knowledge," Trevor depleted his premarital savings to build the home.[1] She testified she did not "know specifically" what happened to the money from one of his life insurance accounts, but her "guess would be that he used that toward the building of" the Penny Circle home. She agreed that her own financial contribution was smaller, between $50,000 and $66,000. She testified that she refinanced the mortgage on her premarital home, receiving about $9,400 which the couple spent on the Penny Circle home.

---

[1] Cara also testified that the couple paid for the construction "as [they] went and, initially, a lot of that money came from . . . the sale of [Trevor's] house and the money that he had in savings from that but then it also came from [her] income."

The parties also testified about the family's health insurance. Cara wanted Trevor to continue paying for private insurance for the children through his employer; she agreed to share the cost of future premiums. She argued that retaining that private insurance would allow the children to continue seeing the same pediatrician they had always seen. Trevor wanted to cancel the private insurance in favor of coverage through the Indian Health Service (IHS). He also asked that he be credited with half the insurance premium costs since separation.

The superior court issued detailed findings of fact and conclusions of law. First, the court valued the Penny Circle property at $704,000 and found that, pursuant to the parties' prenuptial agreement, the land remained Trevor's separate property but the $534,000 increase in value due to construction of the home was marital. The court found that Trevor intended "that the appreciation of the Penny Circle land following the signing of the prenuptial agreement be part of the marital estate," that Trevor's "testimony at trial was consistent with the doctrine of active appreciation," and that Trevor "agree[d] that the Penny Circle home, minus the value of the land at the time of marriage[,] . . . is marital property."

Second, the trial court found it could not credit Trevor for contributions of separate property to the Penny Circle construction because there was "insufficient evidence . . . that such funds were spent for the construction of the home." The court found that Cara "contributed at least $65,837 from her income" to construction costs, that Cara had refinanced her home and put $9,404 in equity toward construction costs, and that the couple had repaid a loan from Trevor's parents with marital funds.

Third, the court declined to credit Trevor with the cost of insuring Cara post-separation "in light of the fact that the cost of health insurance was for the entire family, at no extra cost for including Cara . . . specifically." And Trevor "ha[d] only

recently registered with the Indian Health Service." Cara was required to purchase her own insurance going forward.

Fourth, the court found that a 50/50 split of marital property was fair and equitable. The court noted that Trevor's annual salary was about $90,000, Cara's was about $95,000, and they had "comparable earning capacities." The court concluded that "given Trevor['s] better financial position with no debt and other separate property . . . together with health insurance available to him at no cost, there [were] no grounds warranting an unequal division in Trevor['s] favor."

Finally, the court accepted Cara's proposed child support order, required Trevor to continue to purchase the children's insurance through his employer, and required Cara to contribute $120 monthly (half the cost of adding the children to the plan) going forward.

Both parties moved for reconsideration, which the court denied in part and granted in part in respects not relevant here. Trevor appeals.

## III.   STANDARD OF REVIEW

The equitable division of assets in a divorce has three steps.[2] "First, the trial court must determine what property is available for distribution, characterizing the property as either separate or marital . . . ."[3] We review this determination for abuse of discretion, which "occurs if the court considers improper factors, fails to consider relevant statutory factors, or assigns disproportionate weight to some factors while

---

[2]   *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014).

[3]   *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005).

ignoring others."[4] "We apply our independent judgment to any questions of law"[5] and review factual findings for clear error.[6] "Whether there are sufficient findings for informed appellate review is a question of law" reviewed de novo.[7] Second, the court values the property; we review this valuation for clear error.[8] "Third, the trial court must equitably allocate the property," a ruling we review for abuse of discretion.[9]

Whether an argument has been preserved for appeal is a legal question we review de novo.[10] "Child support awards are reviewed for abuse of discretion,"[11] as are orders denying reconsideration.[12]

## IV. DISCUSSION

### A. The Property Division

#### 1. The superior court's findings are insufficient to support its conclusion that Trevor did not contribute premarital property to the Penny Circle home.

Trevor contends that the superior court erred by classifying the entire increase in the Penny Circle property's value as marital. He argues that he spent

---

[4] *Id.*

[5] *Id.*

[6] *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[7] *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019).

[8] *Hansen*, 119 P.3d at 1009.

[9] *Id.*

[10] *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016).

[11] *Harvey v. Cook*, 172 P.3d 794, 797 (Alaska 2007).

[12] *Stephan P. v. Cecilia A.*, 464 P.3d 266, 272 (Alaska 2020).

$226,000 from his premarital accounts on construction, and this amount should have been subtracted from the home's marital value. He challenges the court's conclusion that there was "insufficient evidence" to support his claim; we conclude that his argument has merit.

Trevor's financial accounts are central to his argument. Three premarital bank accounts are identified in the prenuptial agreement: Emigrant Direct ($213,000), First National Bank of Alaska (FNBA) ($12,000), and Key Bank ($1,000). The agreement lists two life insurance accounts: AXAonline annuity ($15,000) and New York Life ($50,000). The value of these premarital assets totaled approximately $291,000.[13] At the time of trial Trevor still had the Emigrant Direct account; it held $1,836,[14] which the court determined to be marital and awarded to Trevor. He also still had the FNBA account, which held about $72,000; the court classified this amount as marital except for the $12,000 reflected in the prenuptial agreement as Trevor's separate property. He no longer had the life insurance accounts.

Cara asks us to affirm the superior court's conclusion that "insufficient evidence" supported Trevor's claim that his premarital assets were expended on construction of the Penny Circle home. She writes that "[b]oth parties contributed and com[m]ingled premarital and marital funds toward the construction," and Trevor's failure to account specifically for how his funds were spent makes it "impossible to know that they were in fact used wholly for" the Penny Circle home.

---

[13]     Trevor testified at trial that when drafting the prenuptial agreement he "just kind of valued [the accounts] what [he] thought was a good value."

[14]     The court's final property division spreadsheet also listed a Key Bank account that Cara valued at $1,800. The court awarded this to Trevor at $0.00 but did not discuss the award.

"When called upon . . . to review the justness of the division of property in a divorce action, we need to be informed by the trial court what it found to be the ultimate facts upon which it based its conclusion that the property should be divided as it has decreed."[15] Here, the superior court's explanation for rejecting Trevor's claim — that there was "insufficient evidence" to support it — is inadequate for purposes of our review. The parties' prenuptial agreement identified Trevor's premarital accounts and their starting values. Both parties testified that he used his separate savings to fund the construction.[16] Cara agreed at trial that the construction cost at least $250,000; she testified that she spent about $66,000 on it from her salary as well as about $9,400 from the refinancing of her separate residence. This leaves a gap of about $174,600. As Trevor points out, there is no explanation of "how the construction could have been funded if it was not from Trevor's premarital money."[17]

---

[15]     *Merrill v. Merrill*, 368 P.2d 546, 547-48 (Alaska 1962); *see also Dundas v. Dundas*, 362 P.3d 468, 473 (Alaska 2015) ("Factual findings supporting marital property distribution 'must be sufficient to indicate a factual basis for the conclusion reached.' " (quoting *Pfeil v. Lock*, 311 P.3d 649, 653 (Alaska 2013)).

[16]     On appeal Cara argues she "disputed [the claim Trevor spent all his savings on the home] throughout trial" and "consistently [stated] that she did not know specifically [where Trevor's funds were spent] and could only guess their values." But at trial she agreed, "[t]o the best of [her] knowledge," when asked whether it was true that "Trevor essentially depleted his premarital savings to help build the house."

[17]     In his motion for reconsideration Trevor asserted that he "got a loan for $70,000 to finish the house." We see no other mention of this loan in the record. Trevor testified at trial that the "only loan [he'd] had was from [his] parents and then for [his] car]."

The court was not required to accept any testimony at face value, but it made no credibility findings to help us understand its decision.[18] The court should reconsider this issue on remand and more fully explain how it weighed the evidence if it again concludes that it is insufficient to support Trevor's claim that he contributed a substantial amount of his premarital funds to the construction.[19]

> **2. Trevor waived the argument that the superior court should have added the amount of Cara's paid-off student loans to her share of the marital estate.**

Trevor next argues that the superior court erred by refusing to add $20,960 to Cara's share of the marital estate based on the couple's use of marital funds to pay off her premarital student loan debt.[20] We affirm the superior court's refusal to consider this issue because Trevor did not raise it until his motion for reconsideration.

Trial courts are "under no obligation to consider an issue raised for the first time in a motion for reconsideration."[21] Trevor points out that he mentioned the debt in

---

[18] *See Samuel H. v. State, Off. of Child.'s Servs.*, 175 P.3d 1269, 1274 (Alaska 2008) ("When a trial court discredits a witness's testimony but fails to make specific findings on credibility we will remand to the trial court to make such findings or to reverse its decision.").

[19] Trevor also contends that were it not for his reasonable assumption that Cara did not dispute his claim that he had spent his savings on the Penny Circle home, "he would have produce[d] hundreds of receipts and bank account statements as noted in his motion for reconsideration." The superior court declined to accept new evidence on reconsideration, and this was not an abuse of discretion. *See Brett M. v. Amanda M.*, 445 P.3d 1005, 1014 (Alaska 2019) ("While there are circumstances in which a court *may* consider evidence presented for the first time [on a motion for reconsideration], it is not an abuse of discretion to refuse to do so." (emphasis in original)).

[20] Cara does not address the issue on appeal.

[21] *Blackburn v. State, Dep't of Transp. & Pub. Facilities*, 103 P.3d 900, 906
(continued...)

his trial brief and at trial. But his trial brief, while noting Cara's total premarital debt, did not ask that she be credited with that amount. Instead, Trevor asked that the "remaining property . . . be distributed pursuant to [his] proposed distribution on the joint spreadsheet," which did not list the debt. Although the parties talked about Cara's student loans at trial, Trevor did not ask that the amounts be added to her share of the marital estate. Nor did he make that request in his written closing argument. The superior court did not abuse its discretion by declining to consider the issue for the first time on reconsideration.[22]

We may review an argument not properly raised before the trial court only for plain error or when the arguments "(1) do not 'depend on new or controverted facts'; (2) are 'closely related to the appellant's arguments at trial'; and (3) could 'have been gleaned from the pleadings.' "[23] Neither test is satisfied here. A credit for marital funds used for separate purposes is at the discretion of the trial court,[24] so it is not plain error for a court to fail to award such a credit. And the superior court did not make findings about how the loans were paid off, so the argument depends on new facts. Finally, although Cara explicitly did not oppose a credit for her premarital debt in her response

---

[21]    (...continued)
(Alaska 2004) (quoting *J.L.P. v. V.L.A.*, 30 P.3d 590, 597 n.28 (Alaska 2001)).

[22]    *See Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995) ("A trial court's decision on a motion to reconsider will not be reversed on appeal absent an abuse of discretion.").

[23]    *Ivy v. Calais Co.*, 397 P.3d 267, 276 n.30 (Alaska 2017) (quoting *Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 418-19 (Alaska 2001)).

[24]    *See Green v. Green*, 29 P.3d 854, 860 (Alaska 2001) (explaining that "a trial court has discretion to credit one spouse for contributions made with separate property to the marital property subject to division, [but] that failing to make such an adjustment is [not] an abuse of the trial court's discretion" (internal citation omitted)).

to Trevor's motion for reconsideration, her acquiescence does not demonstrate any error on the court's part. We therefore affirm the superior court's decision on this issue.

### 3. Trevor did not waive the issue of dividing the post-separation costs of the children's health insurance.

Trevor next argues that the superior court erred by failing to credit him with his post-separation costs for the children's health insurance. He specifically requested credit for this expense in his motion for reconsideration, but as with the student loan debt, the superior court rejected the request, finding that Trevor had not raised the issue before.[25] Because we believe Trevor did adequately raise this issue, the court should consider it on remand.

Trevor argues that he sufficiently raised this issue at trial, and we agree. On direct examination his attorney asked him, "[T]o the extent that [Cara] is seeking any reimbursement for the rental value of the Penny Circle house against you, do you think the court should give you an offset for the health insurance cost you had to bear?" Trevor answered, "Yeah, I think so[,] I know she used the insurance more than me and the kids and so it was for her benefit and . . . it would benefit the kids and so I think we should split the cost of that insurance."[26] On cross-examination Trevor was asked, "[E]ven though you've had no extra costs for Cara['s health insurance], you think that

---

[25]     In its findings and conclusions the superior court rejected Trevor's request that he be reimbursed for the post-separation costs of insuring Cara, but neither the initial nor amended findings address reimbursement for the children's insurance costs.

[26]     Cara argues based partly on this exchange that Trevor raised this issue conditionally, asking for credit for the post-separation payments only if the court awarded her credit for the rent Trevor saved by living in the Penny Circle home post-separation. Because the superior court denied the rental credits, Cara claims that "the trial court considered the denial of the rental credit and denial of the insurance credit a wash." But the court never made a statement to this effect, and we do not read Trevor's trial testimony as limited to that possible trade-off.

somehow you should be entitled to a credit for a portion of the $320 that you paid a month for yourself and the family?" He responded, "Yeah. I mean, the insurance is for us and the kids and the kids are half ours so I would assume that splitting half of it is a reasonable solution." Cara's attorney replied that they were "not talking about the kids right now." Trevor then agreed that "if there was no extra cost for Cara, . . . she wouldn't owe [him] a credit."

We agree with the superior court that this issue was not clearly presented in the pleadings.[27] But Trevor did adequately raise it at trial. The superior court appears to have — somewhat understandably — misunderstood Trevor's testimony, interpreting his comments as applying only to the cost of *Cara's* post-separation health insurance or to the children's insurance costs going forward. But because Trevor raised the issue, it was an abuse of discretion for the court to decline to consider it when presented with it squarely on reconsideration. On remand the court should determine whether Trevor should be awarded a credit for the children's post-separation insurance costs.

> **4.      The superior court did not abuse its discretion by failing to adequately weigh the parties' age and earning capacity when dividing the marital estate.**

Trevor next challenges the superior court's 50/50 division of marital assets. He argues that because Cara is younger and has a higher earning capacity, a 50/50 split

---

[27]      When filing his initial Child Support Guidelines Affidavit, Trevor requested that "the monthly cost of [health insurance] coverage for the children be split evenly," but he did not request reimbursement of past *post-separation* costs. His trial brief did not address reimbursement for insurance costs, and they were not included in the final property division spreadsheet or Trevor's Property Division Table. His written closing argument asked for reimbursement of his cost to insure Cara post-separation if the court awarded her a rental credit for the time he lived at Penny Circle.

was an abuse of discretion.[28]  We reject this argument.  The court found that Cara was three years younger than Trevor and both parties were healthy.  It found that the parties had "comparable earning capacities" and at the time of trial had similar salaries, though Cara had historically earned more.  It was not clearly unjust to conclude that these small age and salary differences were not significant enough to merit an unequal division.

> **5.     The superior court should reconsider whether Trevor's access to health care through IHS favored an equal division of the marital estate, given the requirement that he purchase private health insurance.**

We identify one other possible flaw in the superior court's property division.  The court concluded that "Trevor['s] better financial position with no debt and other separate property . . . together with health insurance available to him at no cost" militated against an unequal division of the marital estate in Trevor's favor.  But the court also required Trevor to purchase private health insurance, essentially negating any benefit he received by his enrollment in IHS.  The court should revisit this issue on remand when considering the factors relevant to an equitable division of the marital estate.

## B.     The Child Support Order

> **1.     Trevor waived his arguments that requiring him to purchase private insurance violated state and federal law.**

Citing his eligibility for free health care through IHS, Trevor challenges the child support order's requirement that he purchase private insurance for himself and the children.  The superior court found this was appropriate "[b]ecause the parties are in a

---

[28]     Trevor also argues that the property division was actually 66/34 rather than 50/50 because of the superior court's failure to account for his premarital contributions to the Penny Lane home and Cara's premarital debt.  We do not need to address this argument given our remand for reconsideration of his claimed credit for the contribution of premarital assets.

financial position to pay for the cost of health insurance, historically have made the decision to obtain such insurance for the last ten years, and [Cara] continues to support the additional insurance." The court also noted Cara's testimony that retaining the private insurance would allow the children to "continue to see their current pediatrician who they have seen their entire lives who is not through the Indian Health Service."

Trevor contends that the private insurance requirement violates state and federal law in several respects,[29] but we conclude that the arguments are waived. Although he expressed general opposition to the requirement at trial, he did not raise these specific arguments until his motion for reconsideration. They are not closely related to arguments made before the superior court and cannot be gleaned from the pleadings. The requirement that he purchase private health insurance is not plain error.[30] We therefore will not consider it further.

**2. Trevor has waived the arguments that the cost of his own private health insurance should be shared and that the court used incorrect income figures in calculating child support.**

Trevor makes two additional arguments about the child support award. First, he argues that the superior court should have required Cara to share the cost of his private insurance as well as the children's, because the only reason he insured himself was so that he could provide coverage for the children. Second, he argues that the court

---

[29] First, Trevor argues that IHS care meets the state requirement that children have health insurance at a reasonable cost and that the court failed to properly consider the impact of its findings as required by state law. Second, he argues that requiring insurance in addition to IHS coverage is federally prohibited and is inappropriate under a "best interest of the child" analysis because the premium costs will unnecessarily reduce the funds he otherwise has available to spend on the children. He also argues that the court erred by relying on the couple's historic purchase of private insurance, which was necessary only because IHS could not cover Cara.

[30] *See Ivy v. Calais Co.*, 397 P.3d 267, 276 n.30 (Alaska 2017).

relied on incorrect income numbers in its child support calculations. Because we hold that Trevor did not properly raise these arguments before the superior court, we do not consider them on appeal.[31]

In his Child Support Guidelines Affidavit, Trevor asked the court to divide only the children's insurance costs, not the cost of his own coverage. His trial testimony focused on post-separation, not future, insurance costs. His motion for reconsideration did not address insurance costs beyond disputing the insurance requirement itself. And in his reply to Cara's opposition to his motion, Trevor did not argue that all future insurance costs should be shared.

Trevor next argues that trial testimony and pay stubs showed he made slightly less money than Cara but that the court calculated child support using numbers erroneously showing that he made more. Trevor appears to be correct that the court's calculations omitted the $7,600 bonus Cara received in the relevant year. But Trevor first voiced concern with the child support calculations in his reply to Cara's opposition to his motion for reconsideration, where he said he "would like to check the child support calculations because they are not accurate."

Neither of these two arguments meets our tests for clear error.[32] First, division of *only* the children's health insurance cannot be plain error, as it is explicitly

---

[31]    Although Trevor is now pro se, he was represented in the superior court. We therefore do not relax the requirement that arguments be properly preserved in the superior court. *See Briggs v. City of Palmer*, 333 P.3d 746, 748 (Alaska 2014) (explaining that the court "may relax procedural requirements for pro se litigants" in some situations).

[32]    *See Ivy*, 397 P.3d at 276 n.30.

called for in the rule governing division of health insurance costs after a divorce.[33] And Trevor's argument on this point could not have been gleaned from the pleadings before the superior court. Second, although the child support order did not take Cara's bonus into consideration, that decision is not plain error either. The commentary to Rule 90.3 lists bonuses as a part of income,[34] but the superior court could have decided to exclude Cara's bonus as "not reflective of [future] 'economic reality.' "[35] And if we were to consider whether Cara's bonus was reflective of future economic reality, that decision would depend on new, and likely controverted, facts. Because these arguments about child support were not timely raised, we affirm the superior court's child support calculations and division of future insurance costs.

## V. CONCLUSION

We VACATE and REMAND the property division order for reconsideration consistent with this opinion. We AFFIRM the child support order.

---

[33] Alaska R. Civ. P. 90.3(d)(1)(C).

[34] Alaska R. Civ. P. 90.3 cmt. III.A.5.

[35] *See Dunn v. Jones*, 451 P.3d 375, 378 (Alaska 2019) (holding that a trial court might reasonably have determined that certain pay stubs were not reflective of economic reality, and therefore allowing their exclusion from the child support calculation).

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| **Trevor Paul Fairbanks,** | Supreme Court No. **S-17994** |
| Appellant, | |
| v. | **Order** |
| | Petition for Rehearing |
| **Cara Eileen Fox, f/k/a Cara Fox Fairbanks** | |
| Appellee. | Date of Order: **8/17/2022** |

Trial Court No. **3AN-19-05436CI**

Before:    Winfree, Chief Justice, Maassen, and Borghesan Justices

[Carney and Henderson, Justices, not participating.]

On consideration of the Petition for Rehearing filed on **5/26/2022**, and the response filed on **6/7/2022**,

**IT IS ORDERED**:

1.    The Petition for Rehearing is **GRANTED IN PART**.

2.    MO&J No. 1895, issued on 5/18/2022, is **WITHDRAWN**.

3.    MO&J No. 1912, is issued on this date in its place, making the following revisions:

"The court found that Cara 'contributed at least ~~$65,387~~ $65,837 from her income' to construction costs, [...]." MOJ Page 4.

"Cara agreed at trial that the construction cost at least $250,000; she testified that she spent about $66,000 ~~in marital funds~~ on it from her salary [...]". MOJ Page 8.

Entered at the direction of the court.

Clerk of the Appellate Courts

_____
Meredith Montgomery

cc:     Supreme Court Justices
        Judge Lamoureux
        Publishers

Distribution:

Fairbanks, Trevor
Nyquist, Kara